# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT AT GREENEVILLE TENNESSEE

| | | |
|---|---|---|
| Stoneybrooke Investors LLC, | § | |
| Plaintiff | § | |
| | § | **<u>Notice of Removal</u>** |
| V. | § | Removed from: Washington County |
| | § | Circuit Court |
| | § | Civil Action: 42519 |
| Agness Mccurry | § | Jury Trial Demanded |
| Defendant | § | |

**TO:** Clerk of the U.S District Court for the Eastern District of Greeneville Tennessee:

**PLEASE TAKE NOTICE THAT** Defendant, Agness Mccurry, hereby removes to this Court the state court action described herein, pursuant to 28 USC § 1446 (a), 28 USC § 1331, 5th and 14th Amendment Due Process Clause, 18 USC § 1964 (c).

Pursuant to 28 USC § 1446 (d) and this Court's Local Rules, copies of this Notice of Removal are being served on the Washington County Circuit Court Clerk and Counsel Will Ellis of Hunter, Smith and Davis (HSD).

## <u>INTRODUCTION</u>

1. On October 30th 2023, Counsel Ellis filed a detainer action in the General Sessions Court for a money judgment of unpaid rent $678 See **Exhibit A Motion for Summary Judgment**. Agness resided at Stoneybrooke since December 2019 until December 6th 2023 when she was unlawfully arrested and removed from the apartment.

2. Counsel Ellis based his grounds on a written notice that was given to Agness on August 7th 2023. The total rent owed was $2,983.2 through October 6th 2023. Rent payment of $678 was due on the 1st day of each month.

3. Agness had a $99 deposit with Stoneybrooke which she was required to pay when she signed her initial lease in December 2019. Agness always renewed her existing lease agreement yearly with that deposit stored in an unknown account See **Exhibit B Payment of July 7th 2023 rent receipts**. Counsel Ellis stated that Stoneybrooke held $0 paid as damages/security deposit which was false. It is unclear what Debra did with Agness deposit which violated T.C.A § 66-28-301 (a) (2021): "All landlords of residential property requiring security deposits prior to occupancy **are required to deposit all tenants' security deposits in an account used only for that purpose**, in any bank or other lending institution subject to regulation by the state or any agency of the United States government."

4. Agness was unable to pay her rent due to the RICO criminal conspiracy of Benjamin Mccurry, his attorney Counsel Sandy Phillips, the Washington County

judges and Sheriff's. On February 7th 2023, Agness was unlawfully incarcerated at a hearing for Benjamin's fraudulent sole emergency petition that kidnapped her son I.M on September 29th 2022 See 2:23-CV-29. Benjamin was carrying out his initial threat that was made on August 24th 2018 to get sole custody of I.M and deport Agness.

5. Benjamin obtained the services of HSD regarding the green card application process filed October 2017. HSD terminated representation because of the breakdown in the marriage between the parties in late October 2018.

6. Benjamin and his family gang stalked Agness to know her whereabouts after she left the Haven of Mercy homeless shelter and moved to Stoneybrooke. One incident led to a ban by property manager for Stoneybrooke, Debra McCorkle, on March 9th 2020 of Benjamin and his mother Cindy Mccurry See **Exhibit C Ban Notice**. It was Benjamin's will to harm Agness by any means necessary and the Washington County Courthouse and Sheriff's became his accessories. Benjamin needed access to Stoneybrooke.

7. Prior to the detainer action, Agness always made her rent payments timely known to Debra. Agness worked as a self-employed delivery driver for Walmart prior to her termination of employment on June 13th 2023. Agness employment was terminated because Benjamin gained access to her employer through the fraudulent criminal charges of resisting arrest originating from February 7th 2023.

Benjamin gained access to Stoneybrooke by causing Agness to experience financial hardship. Agness was unable to work after the February 7th 2023 arrest which also caused bodily injury See **Exhibit D Termination of Representation by Walmart**.

8. Benjamin and his father Gary Mccurry owed Agness financial assistance pursuant to the Affidavit of Support federal contract I-864. Benjamin and Gary intentionally breached this contract to engage in RICO criminal activity known in 2:23-CV-141.

9. Initially, Stoneybrooke was owned by Willhoit Properties. Stoneybrooke and other properties were sold to Sundance Property Management. On June 5th 2023, Agness had her first appearance at the Washington County Criminal Court before Judge Lisa Nidiffer Rice. Judge Rice recused herself due to the lawsuit 2:23-CV-29 that cited her, Benjamin and other State Officers. Judge Rice among other things: 1) reset Agness Court date to October 30th 2023 and 2) confirmed Agness residential address as 512 Swadley Rd H 64 Johnson City TN 37601.

10. Judge Rice passed a comment that Agness did not take well and left her puzzled. After Judge Rice confirmed Agness address she stated *"if you're still living there."* The following day on June 6th 2023, Agness: 1) Vehicle was repossessed by Eastman Credit Union 2:23-CV-61 and 2) Received a notice from Tiffany Boswell that was addressed to all residents that Sundance Property

Management became the new Property Management Company effective June 6th 2023 See **Exhibit E Email Correspondence from Tiffany Boswell**. On June 13th 2023, Agness was terminated from her employment with Walmart.

11. On July 20th 2023, Agness' Godmother, Etha Jones, assisted Agness with her rent payment that was due on July 1st 2023 **Exhibit B**. Debra was aware that Agness was late but never sent her a 14-day notice. Debra only sent Agness a 14-day notice for the default payment in August 7th 2023. Sundance and Willhoit allowed residents until July 11th 2023 to submit their rent payments because of the property transition.

12. Debra committed aggravated perjury in her affidavit submitted with the Motion for Summary Judgment **Exhibit A**; She stated that Agness "has not paid any rent since July 2023." Debra also failed to state the security deposit of $99 that Agness paid with her original lease signed December 2019. Debra only mentioned the 14-day notice that she emailed Agness in August 2023.

13. On October 30th 2023, the detainer hearing was intentionally set with General Sessions Judge Johnathan Minga to cause a continuous in the case. The Washington County General Sessions judges devised a scheme to block Benjamin and Gary from testifying at the proceeding See **Exhibit F Response and Motion to Deny Continuance and Summary Judgment by Counsel Ellis and Exhibit G Notice of Recusal Fraud**. This was due to the fact that Agness issued a subpoena

for them to testify about the money owed to her from the affidavit of support. Judge Minga recused himself on the grounds of the federal lawsuit 2:23-CV-29 that he was served with.

14. That same day, Agness was served a fraudulent Order of Protection (OOP) #42482 that was also filed in the General Sessions Court by Benjamin McCurry on October 27th 2023 and granted by Judge Janet Hardin **Exhibit F**. This OOP blocked Agness access to her son I.M.

15. In the afternoon of October 30th 2023 at 1:30pm, Agness had her first appearance before Senior Judge D Kelly Thomas Jr. Agness filed a federal lawsuit 2:23-CV-130 which proved that Judge Thomas Jr had an invalid Oath of Office See **Exhibit H Copy of Oath of Office for Judge Thomas Jr and Exhibit I Copy of Retaliatory Order filed October 27th 2023**. On August 4th 2023, Judge Thomas Jr swore an Oath of Office claiming to be a "Senior Judge" without any evidence of appointment from the former Chief Justice Roger Page.

16. On August 30th 2023, Justice Page formally and publicly announced the appointment of Judge Thomas Jr to the office of Senior Judge with start date of September 1st 2023 **Exhibit J Senior Judge Announcement by Justice Roger Page of Judge D Kelly Thomas Jr**. According to Tennessee law Judge Thomas Jr was required to take and file his sworn Oath of Office after the appointment and before the start of office. "(c) The oath may be administered at any time after an

appointment, in the case of appointed officials, or in the case of elected officials after the election, but before the judge or public official assumes office, so long as the results of the election establishing that the person taking the oath won the election are certified by the appropriate legal authority. Even though an official may file an oath before the scheduled start of a term of office, the official may not take office until the term officially begins" See Tenn. Code § 8-18-107 (c). Judge Thomas Jr's Oath violated this statute because it was taken on August 4th 2023; His oath of office was supposed to be taken and filed on the dates of August 30th and 31st 2023 but before September 1st 2023. Judge Thomas Jr's oath of office was received on September 11th 2023.

17. Counsel Ellis rescheduled the October 30th 2023 hearing and gave Agness notice while she was in jail serving a fraudulent criminal contempt charge: for a copy of the recording that she took on June 5th 2023 before Judge Rice and posted on Tik Tok See **Copy of October 30th 2023 Recording on flashdrive Exhibit NR**. Cell Phones and recording devices were banned because of the ongoing criminal activity by the Washington County Courthouse and Sheriff's department to commit State and federal crimes against Agness for the best interests of Benjamin. The case was reset for November 15th 2023 at 9am.

18. Judge Hardin presided over Agness first appearance in criminal court on February 8th 2023 after she was unlawfully arrested on February 7th 2023. Judge

Hardin granted Benjamins OOP knowing that she lacked subject matter and personal jurisdiction over Agness, Benjamin and the minor child I.M. There was an existing divorce case in #38147 with Judge Thomas Jr.

19. On November 1st 2023, Judge Stacy Street entered an Order of Recusal on behalf of the judges sued in 2:23-CV-29 for the OOP that was granted by Judge Hardin See **Exhibit K Order of Recusal in OOP#42482**. Judge Hardin never knew about Judge Street's Order because the OOP was pending and set for November 13th 2023 in her courtroom. Judge Hardin recused and disqualified from the hearing on November 15th 2023.

20. Counsel Ellis engaged in threats, intimidation and coercion prior to the hearing when Agness was outside the courtroom. Counsel Ellis informed Agness that: 1) Stoneybrooke filed the detainer proceeding because it was not interested in the unpaid rent but wanted possession of the property ONLY and 2) The existing lease agreement made no provision for attorney fees.

21. Counsel Ellis informed Agness that the outcome of the proceeding was not going to be in her favor if she did not "agree" that Stoneybrooke had the right to possession of the property. Counsel Ellis also stated that the unpaid rent would be waived if she AGREED to his proposal to move out.

22. On October 30th 2023, Judge Minga informed Agness and Counsel Ellis that the Administrative Office of the Courts (AOC) would appoint a judge to preside at

8

the next hearing. This was not the case at all. Judge Hardin assigned herself to the case without agreement or consent of the parties; She ignored Judge Minga's recusal order.

23. On November 15th 2023, Judge Hardin recused herself from the proceeding to *"avoid the appearance of impropriety"*; she violated Rule 10B of the Tennessee Supreme Court when she selected her "successor" Judge Robert Lincoln to preside over the hearing. "A judge who recuses himself or herself, whether on the judge's own initiative or on motion of a party, shall not participate in selecting his or her successor, absent the agreement of all parties." Tenn. Sup. Ct. R10B 1.04.

24. Agness never agreed to Judge Lincoln to preside over the case; This was done based off the wishes of Counsel Ellis and Stoneybrooke. Judge Lincoln entered the Order in favor of Stoneybrooke on allegations that it was an "agreement" of the parties. Agness had no choice or say in this fraudulent proceeding.

25. Agness appealed Judge Lincoln's Order to the Washington County Circuit Court #42519 because it was not final until after 10 days See **Exhibit L Notice of Appeal to Circuit Court**. "(a) (1) Any party may appeal from a decision of the general sessions court to the circuit court of the county within a period of ten (10) days on complying with the provisions of this chapter." See T.C.A § 27-5-108.

26. On November 16th 2023, notice of the appeal was sent to Agness and Attorney Michael Eastridge from HSD. Counsel Eastridge never participated in the case with Stoneybrooke; He was the former immigration attorney that withdrew from representation of Agness and Benjamin in October 2018 See **Exhibit HSD Conflict of Interest Notices**.

27. On November 21st 2023, Judge Stacy Street entered another Order of recusal in case #42519 without notification to the parties and sent it directly to the Administrative Office of the Courts (AOC) See **Exhibit M Order of Recusal by Judge Street in #42519**.

28. Judge D Kelly Thomas Jr was assigned to the case by Chief Justice Holly Kirby the same day with notice of the Order sent to the parties **Exhibit G**. The Washington County Circuit Court Clerk received Judge Streets recusal Order on November 27th 2023 and sent notice of that Order on November 29th 2023. Agness was informed that Judge Thomas Jr was assigned to the case before the recusal Order was entered into the case.

29. Judge Stacy Street's recusal orders violated Rule 10B; He was supposed to contact the other presiding judges in the surrounding judicial districts prior to seeking interchange with the AOC See **Exhibit N Briefs and Decisions with the Appellate & Supreme Court of Tennessee**.

30. "The presiding judge or the presiding judge pro tempore of the judicial district shall effect an interchange with a judge from another judicial district in accordance with Tenn. Code Ann. § 16-2-509(d)" See Tenn. Sup. Ct. R.11,§ VII(c)(3). "If a presiding judge is unable to correct a caseload imbalance or reduce docket delays utilizing the available judges within the district over which the judge presides, it is the affirmative duty of the presiding judge to contact other presiding judges and request assistance or contact the supreme court and request assistance pursuant to § 16-3-502." See Tenn. Code. Ann. § 16-2-509(d).

31. "At the bottom of Tenn. Sup. Ct . R. 10B "Request for Designation of Judge" form it states the following certifications required by the presiding judge: "I, as Presiding Judge/Presiding Pro Tem pursuant to Tenn. Sup. Ct. R. 11, § VII(c)(2) and Tenn. Cod Ann. § 16-2-509(c), have contacted the judges within my judicial district and have been unable to assign the case listed above by interchange to any trial judge within my judicial district. I, pursuant to Tenn. Sup. Ct. R.11,§ VII(c)(3) and Tenn. Code. Ann. § 16-2-509(d) have also contacted the Presiding Judge within our contiguously located judicial districts and have been unable to assign the case by interchange to other trial judges within adjoining judicial districts."

32. Debra committed aggravated perjury when she alleged that Agness had not paid rent since July 2023 **Exhibit A**. Agness never stated that in open court.

Agness was subjected to threats, intimidation and coercion by Counsel Ellis outside of Court.

33. Counsel Ellis and Debra engaged in RICO criminal activity to commit fraud upon the Court as retaliation for Agness' appeal of Judge Lincoln's Order. The General Sessions Court lost jurisdiction of the case after Agness filed the appeal docketed on November 16th 2023.

34. Counsel Ellis obtained a fraudulent writ of possession with the General Sessions Court on December 1st 2023 knowing that the appeal #42519 was pending in Circuit Court. On December 6th 2023, Agness was arrested at her apartment on a fraudulent capias that was issued by Judge Thomas Jr on November 27th 2023 See **Exhibit O Bench Warrant Order and Capias**, and **Exhibit P Motion for Zoom link and Orders Denying Zoom Link and Recusal filed November 27th 2023**. Judge Thomas Jr had zoom hearings at the Washington County Courthouse since Agness first appearance on October 30th 2023. Agness was taken to a designated room at the courthouse for her hearings.

35. Agness vehicle was repossessed on June 6th 2023 and was unable to physically attend the hearing for another fraudulent criminal contempt proceeding that originated from the divorce case by Benjamin and Counsel Phillips. Judge Thomas Jr denied Agness' motion for a zoom hearing that she filed with the Court.

36. Agness received new fraudulent criminal charges from December 6th 2023 of: 1) 1 count Resisting Arrest Class B Misdemeanor and 2) Counts of Prevention or Obstruction of Service of Legal Writ or Process (Counsel Ellis' writ of possession) See **Exhibit Q Email from Michael Dunavant**.

37. Agness was not aware that Counsel Ellis took out a writ of possession at the time she was arrested. Agness learned of these facts from Washington County Sheriff Officer Amanda Phillips when she was being booked at the Washington County Detention Center. Agness made calls to Ms. Jones and Dennis Merritt that confirmed that Agness belongings were being removed by Stoneybrooke outside See **Exhibit R Email Correspondence to Counsel Will Ellis about Agness belongings December 6th 2023 and Pictures of Agness belongings taken by James Peeples**.

38. Debra and Counsel Ellis committed aggravated perjury in their motion and affidavit for summary judgment submitted on January 18th 2024. Counsel Ellis alleged that: 1) Agness stated in open court on November 15th 2023 that she "had never paid rent since July 2023" and that Stoneybrooke was "entitled to possession of the property and amount of rent owed, 2) Agness "agreed" to a "judgment for both possession and back-rent in the amount of $2,985.2", 3) Stoneybrooke complied with Tennessee law and "did not move, alter, or otherwise disturb Ms. McCurry's possessions for forty-eight hours" Tenn. Ann. § 29-18-127 (b), 4)

Stoneybrooke did not "impede or interfere with Ms. McCurry's right to recover her personal property", 5) Agness appeal was "invalid" because of false allegations that she "agreed" to Judge Lincoln's judgment.

39. Stoneybrooke removed Agness personal belongings on December 6th 2023 from the apartment immediately after she was arrested. A picture was taken by James Peeples and sent to Mr. Merrit. Ms. Jones also received the pictures from Mr. Merrit. Counsel Ellis received phone calls from Mr. Merrit and Debra received phone calls from Ms. Jones regarding the removal of Agness property and personal belongings.

40. On December 9th 2023, Mehtap Birdal traveled to Agness address and witnessed firsthand the continued collection of Agness property by the other tenants disposed of by Stoneybrooke. Mehtap sent Agness the picture of the writ of possession that was stuck on her door after she came out of jail December 26th 2023 See **Exhibit S Copy of Text Messages from Mehtap Birdal and Mereyem Defazio**. This picture was also sent to Mehtap's sister in Florida who requested that she check on Agness' wellbeing. Mehtap was told by the other tenants that Agness had "criminal charges" and were permitted to take her belongings from Stoneybrooke management. Agness was provided clothing because she lost everything on December 6th 2023.

41. On December 25th 2023, Agness was informed by Epson that her printer ET-2720 registered in her name was deleted. It became the property of another unknown individual and was in their possession because of the theft that occurred on December 6th 2023.

42. Counsel Ellis knew that he filed a fraudulent detainer from the beginning of the case; He was working for the best interests of Benjamin and the State Officers sued in 2:23-CV-29. Counsel Ellis petitioned for the back rent which increased from $2,983.2 to $5,183.98. It was unclear how the rent increased from what was filed in the General Sessions Court. Counsel Ellis also petitioned for attorney fees in his motion for summary judgment; He informed Agness outside on November 15th 2023 that the lease agreement did not "provide for attorney fees" See **Exhibit U Outstanding balance from August 1st 2023 to January 2024 from Sundance Property Management.**

43. Counsel Ellis was determined to get his way by any means necessary. It was clear that the unpaid rent was not an issue to Stoneybrooke but to remove Agness from the apartment. Agness submits public Tik Tok videos that discussed this case as well as the actual audio of Counsel Ellis contradictory statements after discussion with Stoneybrooke when the case was pending in Circuit Court See **Exhibit NR Flashdrive** and **Exhibit WE Transcripts and Documents emailed to Stoneybrooke and Counsel Ellis.**

44. Debra stated in her affidavit that Agness personal property and belongings were "removed" from the apartment on December 6th 2023 by "a third party moving company." Debra also stated that Agness was "evicted" December 5th 2023. Agness was in the apartment on that date and was unaware of anything. There was no final judgement on her appeal.

45. Counsel Ellis obtained a writ of possession on December 1st 2023 and it was executed on December 6th 2023. The writ was documented as a "peaceful possession" by Officer Cunningham but Agness was charged with 2 counts of obstruction of the writ by Officer Phillips. Stoneybrooke clearly confessed to causing RICO injury to Agness property and belongings.

46. Stoneybrooke and Counsel Ellis violated Tennessee law and caused injury to Agness property and belongings. Their actions constitute RICO racketeering which establishes removal as a federal question case 18 USC § 1964 (c). Agness received criminal charges from Judge Thomas Jr's fraudulent capias that was issued for Stoneybrooke's best interests. Knowing that his Oath of Office is invalid, Judge Thomas Jr committed the RICO crimes of obstruction of justice section 1503, fraud and "related activity in connection with identification documents" section 1028, wire fraud section 1343, retaliation against a witness or victim or an informant section 1513.

47. Judge Thomas Jr has been committing civil rights violations in all of Agness cases known to the federal court in 2:23-CV-130 and 2:23-CV-29. Stoneybrooke and Judge Thomas Jr attacked Agness for the sole purpose of destroying the evidence that was stored at her apartment. This is spoliation of evidence.

48. Stoneybrooke refused to assume responsibility of the electricity in the unit after evicting Agness on December 6th 2023. Brightridge electrical company sent Agness bills that started on December 18th 2023 up to March 18th 2024. Stoneybrooke continued to retaliate against Agness because of her appeal in Circuit Court. Stoneybrooke felt empowered to violate Tennessee law because Debra informed them of the other retaliatory actions against Agness that she personally saw in the Tik Tok videos. On January 8th 2024, Agness submitted a disconnection request with Brightridge of her account active in her name See **Exhibit W Disconnection Confirmation by Brightridge**.

49. Agness account also remained active after eviction from her apartment on December 6th 2023. On January 2nd 2024, Agness was charged $1500 for 4 movers that "removed items from the apartment" **Exhibit U**. Counsel Ellis, Stoneybrooke and Debra are comfortable committing aggravated perjury and fraud upon the Court; This is because Judge Thomas Jr is paid by the State of Tennessee to violate Tennessee and Federal law.

50. Agness has a total balance of $10,029.78 as of January 2nd 2024 **Exhibit X Sundance Management Move Out Survey.** On January 2nd 2024, Sundance sent Agness a survey to mock her with false allegations that she "moved out"; Stoneybrooke evicted Agness while her appeal was pending.

51. Stoneybrooke chose to breach the lease agreement and commit criminal activity. Stoneybrooke breached the lease agreement by: 1) Waiving their right to put a lien on Agness property after she was evicted on December 6th 2023 See **"Contractual Lien and Property Left in Dwelling Unit"** Page 2, 2) Disposing of Agness property and belongings which she was entitled to reclaim See **"Property Left in Dwelling Unit"** See Page 2, 3) Failure to issue 14-day notice for the July 2023 late rent payment "See **Eviction-Counties Where Tennessee Uniform Residential Landlord and Tenant Act Applies**" Page 5, 4) Evicting Agness on false ground that she "moved out" while an appeal was pending See **"When Moving Out"** Page 6, 5) Conspiracy to commit fraud through the writ of possession because of failure to give notice to "vacate" See **"Obligation to Vacate"** Page 6, 7) Failure to provide Agness with the required "itemized accounting of any deductions within the time frames and parameters set forth under state law after surrender or abandonment of the premises" See **"Security Deposit Deductions and Other Charges & Deposit Return, Surrender and Abandonment"** Page 7.

52. It mattered that Agness had a pending appeal in Circuit Court. Agness failure to file a stay bond in accordance with T.C.A § 29-18-130 (b) (2) (A) did not deny her right to an appeal pursuant to Tennessee law T. C. A § 27-5-108 and Due Process under the 5th and 14th Amendment. Agness was deprived of her right to reclaim her property which was disposed off on December 6th 2023 and allowed to be stolen by other Tenants through the deception and chicanery of Stoneybrooke, Counsel Ellis and Judge Thomas Jr.

53. Counsel Ellis is engaged in a conspiracy to dismiss Agness' appeal on the ground that she "failed to file a stay bond". This is because RICO injures have already occurred to Agness property and belongings. Stoneybrooke rented the apartment to Walter Marsh and Elvia Reyes Diaz while the appeal with Agness is pending.

54. At the November 15th 2023 hearing Stoneybrooke was not granted a writ of possession immediately. Judge Lincoln ruled that "*no writ of possession may execute until after November 30th 2023.*" Judge Lincoln also announced in General Sessions Court that his Judgment was not final until 10 days elapsed. Agness appealed the judgment on November 16th 2023.

55. On December 1st 2023, Counsel Ellis obtained a fraudulent writ of possession on grounds that Agness never appealed Judge Lincoln's Order.

Stoneybrooke was not entitled to a writ of possession because it was not granted at the November 15th 2023 hearing immediately.

56. "(a) When judgment is rendered in favor of the plaintiff, in any action of forcible entry and detainer, forcible detainer, or unlawful detainer, brought before a judge of the court of general sessions, and a writ of possession is awarded, the same shall be executed and the plaintiff restored to the possession immediately.(b)(1) If the defendant pray an appeal, then, in that case, the plaintiff shall execute bond, with good and sufficient security, in double the value of one (1) year's rent of the premises, conditioned to pay all costs and damages accruing from the wrongful enforcement of such writ, and to abide by and perform whatever judgment may be rendered by the appellate court in the final hearing of the cause.(2)(A) If the defendant prays an appeal, then the defendant must execute bond, or post either a cash deposit or irrevocable letter of credit from a regulated financial institution, or provide two (2) good personal sureties with good and sufficient security in the amount of one (1) year's rent of the premises, conditioned to pay all costs and damages accruing from the failure of the appeal, including rent and interest on the judgment as provided for in this section, and to abide by and perform whatever judgment may be rendered by the appellate court in the final hearing of the cause.(B) The plaintiff is not required to post a bond to obtain possession if the defendant appeals without complying with this subdivision (b)(2).

The plaintiff is entitled to interest on the judgment, which accrues from the date of the judgment if the defendant's appeal fails." See T. C. A § 29-18-130.

57. "Although there was some disagreement in the Court of Appeals as to whether this bond was jurisdictional when a tenant maintains possession of the disputed property, this Court recently issued an opinion firmly establishing that the failure to post a bond under section 29-18-130(b)(2) does not deprive the circuit court of subject matter jurisdiction to consider an appeal of a detainer action. See Belgravia Square , LLC v. White , No. W2018-02196-COA-R3-CV, 2019 WL 5837589, at *4 (Tenn. Ct. App. Nov. 7, 2019). In support, the court in Belgravia Square noted that the Tennessee Supreme Court has described the section 29-18-130(b)(2) bond as "non-jurisdictional." Id. (quoting Johnson v. Hopkins , 432 S.W.3d 840, 849 (Tenn. 2013) (noting that section 29-18-130(b)(2) merely supplements, and therefore is harmonious with, Rule 62.05)). As such, other panels of this court have concluded that even where a tenant remains in possession of the property, the failure to post the section 29-18-130(b)(2) bond does not deprive a trial court of jurisdiction to hear the tenant's appeal from general sessions court. Rentals v. Appelt , No. E2017-01565-COA-R3-CV, 2018 WL 3701826, at *3 (Tenn. Ct. App. Aug. 3, 2018); McLucas v. Nance , No. M2015-00642-COA-R3-CV, 2015 WL 5936935, at *3 (Tenn. Ct. App. Oct. 12, 2015) ("Tenant's failure to file a bond in the amount of one year's rent did not prevent him

from perfecting his appeal to circuit court."); Valley View Mobile Home Parks , LLC v. Layman Lessons , Inc., No. M2007-01291-COA-R3-CV, 2008 WL 2219253, at \*3 (Tenn. Ct. App. May 27, 2008) ("To the extent the Trial Court construed and applied Tenn. Code Ann. § 29-18-130(b)(2) as requiring Tenant to post a bond in the amount specified as a condition of prosecuting the appeal, it committed error.") Thus, "[t]he statute and case law make clear that a possessory tenant's failure to file a bond in the amount of one year's rent does not prevent that tenant from perfecting his or her appeal to circuit court." Belgravia Square , 2019 WL 5837589, at \*4." See *Thomas v. Millen*, No. W2019-00086-COA-R3-CV, 5 (Tenn. Ct. App. Dec. 19, 2019).

58. Counsel Ellis and Stoneybrooke allowed Agness to stay in the unit until November 30th 2023 knowing she was in default. Agness' default of rent payments didn't bother Stoneybrooke because Agness presented the Affidavit of Support to Debra and Stoneybrooke management. Counsel Ellis was disqualified because HSD stated that they had an existing conflict of interests regarding any immigration matters related to Agness case.

59. Counsel Ellis provided legal advice to Debra and Stoneybrooke to ignore the Affidavit of Support which violated the existing conflict of interest between HSD and Agness. It was clear that Counsel Ellis was compromised and working for the best interests of Benjamin Mccurry. Benjamin and his wife Kelly relied

upon Stoneybrooke to unlawfully evict Agness to support their narrative to petition to terminate her parental rights and adopt I.M.

60. Agness had the right to inspect the unit under Tennessee law but the fraudulent writ of possession violated that right. "The tenant shall not have a right to inspect the premises as provided in this section if the tenant has: Vacated the rental premises without giving written notice; Abandoned the premises; Been **judicially removed from the premises**; Not contacted the landlord after the landlord's notice of right to mutual inspection of the premises; Failed to appear at the arranged time of inspection as provided in subdivision (b)(1); or If the tenant has not requested a mutual inspection pursuant to subsection (b) or is otherwise inaccessible to the landlord." Agness' existing pending criminal charges for two counts of obstruction of justice of the writ are defeated by the narration of Debra and Officer Cunningham. It remains documented that the fraudulent writ of possession was "peaceful."

61. Stoneybrooke, Counsel Ellis, and Judge Thomas Jr teamed up to retaliate against Agness. Judge Thomas Jr told Agness on October 30th 2023 that he "*didn't care about her lawsuit*" and that if his decisions were wrong she could "*appeal it.*" Judge Thomas Jr is stationed at the Appellate Court and Supreme Court Knoxville Tennessee. Judge Thomas Jr is positioned there to establish a conflict of interest with the judges to influence the outcomes of appeals See E2023-01673-SC-R11-

CV and E2023-01673-COA-R3-CV. These appeals were dismissed by a complete ignorance of the law and facts that Judge Stacy Street violated Rule 10B of the Tennessee Supreme Court See **Exhibit NR and Exhibit DKJR Transcript of Call with Appellate Court February 29th 2024**.

62. Removal is necessary in this case because of on going RICO violations at the State level that caused injury to Agness property and belongings. "If the landlord unlawfully removes or excludes the tenant from the premises or willfully diminishes services to the tenant by interrupting essential services as provided in the rental agreement to the tenant, the tenant may recover possession or terminate the rental agreement and, in either case, recover actual damages sustained by the tenant, and punitive damages when appropriate, plus a reasonable attorney's fee. If the rental agreement is terminated under this section, the landlord shall return all prepaid rent and security deposits." See T. C. A § 66-28-504.

63. Stoneybrooke knows that Agness was unlawfully evicted on December 6th 2023. This was the reason Debra refused to assume the electricity in Stoneybrooke's name. Although Agness is entitled to damages under the Tennessee Uniform Residential Landlord and Tenant Act (URLTA), she prefers the civil RICO 18 USC § 1964 (c) provision to obtain the three-fold damages instead.

64. Judge Thomas Jr has demonstrated a repeated pattern of depriving Agness due process known in her divorce case; Judge Thomas Jr granted her abuser

Benjamin Mccurry, registered under the VAWA, custody of the minor child I.M through a fraudulent Order of Protection (OOP) on November 20th 2023. Judge Thomas Jr freely violates State and Federal law paid for by the State of Tennessee under Johnathan Skrmetti.

65. Pursuant to LR3.1, Agness completed a civil cover sheet with this pleading.

## BASIS FOR REMOVAL

**1. Removal is Proper because this Court has subject matter jurisdiction pursuant to 28 USC § 1446 (a), 28 USC § 1331, 5th and 14th Amendment Due Process Clause, 18 USC § 1964 (c). Pursuant to 28 USC § 1446 (d).**

1. The case between Agness and Stoneybrooke is a federal question case because: 1) Judge Thomas Jr lacks judicial authority to preside over any cases in Tennessee due to his invalid oath of office that violated Tenn. Code § 8-18-107 (c) proved in 2:23-CV-130 and 2) Stoneybrooke, Counsel Ellis and Judge Thomas Jr engaged in a RICO criminal conspiracy that caused injury to Agness property and belongings on December 6th 2023.

2. Agness property and belongings were injured without Due Process of law. The following RICO predicate acts are present in the State Court case which include but not limited to: obstruction of justice section 1503, fraud and "related activity in connection with identification documents" section 1028, wire fraud section 1343, retaliation against a witness or victim or an informant section 1513.

3. "(a) The district courts of the United States **shall have jurisdiction to prevent and restrain violations of section 1962 of this chapter** by issuing appropriate orders, including, but not limited to: ordering any person to divest himself of any interest, direct or indirect, in any enterprise; imposing reasonable restrictions on the future activities or investments of any person, including, but not limited to, prohibiting any person from engaging in the same type of endeavor as the enterprise engaged in, the activities of which affect interstate or foreign commerce; or ordering dissolution or reorganization of any enterprise, making due provision for the rights of innocent persons... (c) Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee" See 18 USC § 1964 (a) & (c).

4. "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." See 28 U.S. Code § 1331.

5. Counsel Ellis violated his ethical obligations not to use his legal services to commit fraud for the best interests of Stoneybrooke Rule 1.16 of Professional Responsibility [1].

6. Also Counsel Ellis violated his Oath to the US Constitution when he participated in RICO racketeering with Stoneybrooke and Judge Thomas Jr. "(3) Each applicant for admission shall take the following oath: I, _____, do solemnly swear or affirm that I will support the Constitution of the United States and the Constitution of the State of Tennessee. In the practice of my profession, I will conduct myself with honesty, fairness, integrity, and civility to the best of my skill and abilities, so help me God." See Admission of Attorney's Tennessee Supreme Court Rule 6.

---

[1] (a) Except as stated in paragraph (c), a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if:
(1) the representation will result in a violation of the Rules of Professional Conduct or other law;
(2) the lawyer's physical or mental condition materially impairs the lawyer's ability to represent the client; or
(3) the lawyer is discharged.
(b) Except as stated in paragraph (c), a lawyer may withdraw from representing a client if:
(1) withdrawal can be accomplished without material adverse effect on the interests of the client;
(2) the client persists in a course of action involving the lawyer's services that the lawyer reasonably believes is criminal or fraudulent;
(3) the client has used the lawyer's services to perpetrate a crime or fraud;
(4) the client insists upon taking action that the lawyer considers repugnant or imprudent;
(5) the client fails substantially to fulfill an obligation to the lawyer regarding the lawyer's services and has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled;
(6) the representation will result in an unanticipated and substantial financial burden on the lawyer or has been rendered unreasonably difficult by the client;
(7) other good cause for withdrawal exists; or
(8) the client gives informed consent confirmed in writing to the withdrawal of the lawyer. See Rule 1.16 - DECLINING OR TERMINATING REPRESENTATION, Tenn. R. Sup. Ct. 1.16

7. Federal Courts are also empowered to issue injunctions against State Officers like Judge Thomas Jr from threatening proceedings against a litigant that challenged the constitutionality of their actions under the Ex Parte Young Doctrine. "The various authorities we have referred to furnish ample justification for the assertion that individuals, who, as officers of the State, are clothed with some duty in regard to the enforcement of the laws of the State, and who threaten and are about to commence proceedings, either of a civil or criminal nature, to enforce against parties affected an unconstitutional act, violating the Federal Constitution, may be enjoined by a Federal court of equity from such action." See *Ex Parte Young*, 209 U.S. 123, 155-56 (1908).

8. This Court is the proper venue for Agness to raise her civil rico claims against Stoneybrooke and obtain a judgment disposing of the case for RICO violations that caused injury to her property and belongings on December 6th 2023. Even if Agness were to prevail at the State Court, she would be forced to file a federal lawsuit to reallege the same claims at the federal level, obtain three-fold damages provided by the RICO statute 18 USC § 1964 (c).

9. "This Court also presents federal interests because of the invalid Oath of Office by Judge Thomas Jr. All his Orders are void and lack authority. Where a Court has jurisdiction, it has a right to decide any question which occurs in the cause; and, whether its decision be correct, or otherwise, its judgments, until

reversed, are regarded as binding in every other Court. **But if it act without authority, its judgments and orders are regarded as nullities. They are not voidable, but simply void; and form no bar to a remedy sought in opposition to them, even prior to a reversal**. They constitute no justification; and all persons concerned in executing such judgments, or sentences, are considered, in law, as trespassers. {340} The jurisdiction of any Court, exercising authority over a subject, may be inquired into in every other Court, when the proceedings of the former are relied on, and brought before the latter by a party claiming the benefit of such proceedings" See *Elliott v. Peirsol*, 26 U.S. 328, 329 (1828).

10. Stoneybrooke, Counsel Ellis and Judge Thomas Jr are tampering with the administration of justice with their RICO criminal offenses. "Furthermore, tampering with the administration of justice in the manner indisputably shown here involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society. Surely it cannot be that preservation of the integrity of the judicial process must always wait upon the diligence of litigants. The public welfare demands that the agencies of public justice be not so impotent that they must always be mute and helpless victims of deception and fraud." See *Hazel-Atlas Co. v. Hartford Co.*, 322 U.S. 238, 246 (1944).

11. "Most of our state constitutions, echoing Magna Carta, proclaim that "every person ought to obtain justice freely without being obliged to purchase it"; yet, as matters now stand, men are often "obliged to purchase justice" or go without it if they have not the wherewithal." *United States v. Johnson*, 238 F.2d 565, 573 (2d Cir. 1956).

12. Agness is already denied justice in her case because the injury occurred to her property and belongings on December 6th 2023 confessed by Debra and Counsel Ellis in their pleadings.

## Preservation of Rights and Defenses

13. Agness preserves all her rights including but not limited to, defenses and objections as to venue, jurisdiction, counterclaims, motions to dismiss/remand, motions for preliminary injunction/restraining order,etc. The filing of this Notice of Removal is subject to, and without waiver of, any such defenses and objections.

14. Agness also reserves the right to amend or supplement this Notice of Removal.

15. Agness reserves the right to seek damages including but not limited to pain and suffering, compensatory etc from Stoneybrooke Investors LLC for the RICO injuries to her business and property.

16. Agness also reserves her right to a jury trial at the federal level which was included in her existing case in Circuit Court. "In Suits at common law, where the

value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law." 7th Amendment to the US constitution.

WHEREFORE, Defendant Agness Mccurry respectfully gives notice that the above-captioned civil action pending at the Circuit Court of Washington County Tennessee is removed to this Court pursuant to 28 USC § 1446 (a), 28 USC § 1331, 5th and 14th Amendment Due Process Clause, 18 USC § 1964 (c).

Date: May 9, 2024

Respectfully Submitted,

Agness Mccurry, Pro Se
512 Swadley Rd H64
Johnson City TN 37601

<u>CERTIFICATE OF SERVICE</u>

I, Agness Mccurry, hereby certify that the foregoing Notice of Removal, and all exhibits thereto were served via mail upon the Washington County Court Clerk and Counsel Will Ellis for Stoneybrooke at the following address this May 10th 2024 via mail and email at the following addresses:

**Washington County Circuit Court Clerk**
108 W Jackson Blvd#2167
Jonesborough TN 37659

Counsel Will Ellis
**Attorney for Stoneybrooke LLC**
wellis@hsdlaw.com
100 Med Tech Parkway Suite 110
Johnson City TN 37604
423-378-8834

Date: May 10, 2024

Agness Mccurry, Pro Se